IN THE UNITED STATES DISTRICT COURT
FOR THE DISCTRIC OF SOUTH CAROLINA
FLORENCE DIVISION

C/A NO.: 4:11-cv-01327-TLW

| | | |
|---|---|---|
| Tabitha Alexson as Natural Guardian and Next Friend for Ethan Grooms, Plaintiff, | ) | **FIRST AMENDED COMPLAINT (Jury Trial Demanded)** |
| vs. | ) | |
| Blitz U.S.A., Inc., Defendant | ) | |

NOW INTO COURT, by and through undersigned counsel, come Plaintiff Tabitha Alexson as Natural Guardian and Next Friend to her son Ethan Grooms a minor, who, in support of their claims against Defendant Blitz U.S.A., Inc. ("Blitz") alleges as follows:

## INTRODUCTION

1. On or about December 6, 2009, a portable plastic gas can manufactured and sold by Blitz exploded causing Plaintiff's son Ethan Grooms to suffer severe burns which have caused them to incur substantial medical expenses, caused Ethan to suffer disfigurement and other recoverable damage. This action is brought against the Defendant pursuant to the laws of the State of South Carolina to recoup all compensatory and punitive damages to which the Plaintiff is entitled as a result of the personal injuries suffered by Ethan Grooms, a minor.

## PARTIES

2. Plaintiff Tabitha Alexson and her son Ethan Grooms are citizens and residents of Marlboro County, South Carolina.

3. Defendant Blitz U.S.A., Inc. is a non-resident corporation with its principal place of business in Miami, Oklahoma, but which is not qualified under the Constitution and laws of the State of South Carolina as doing business here, but which at all times material was doing business herein, and, in addition, made a contract with a resident of this State, and which committed a tort in this State against a resident of this State, from which such acts this suit arises and by such acts is deemed to be doing business in South Carolina and subject to the jurisdiction of the Courts in this State and for which process upon this Defendant may be had by serving its registered agent, Rocky Flick, Blitz U.S.A., Inc., 404 26th Ave. NW, Miami, Oklahoma 74354-2206.

## JURISDICTION & VENUE

4. Venue is proper in this division because a substantial part of the events giving rise to this action occurred in this division.

5. Defendant has purposefully availed itself of the privilege of conducting business activities within the State of South Carolina by placing products, including the portable gasoline container at issue in this matter, into the stream of commerce and by advertising their products and establishing retail facilities within the State.

6. Defendant derives substantial revenue from goods sold and used in the State of South Carolina.

7. Defendant does reasonably expect, or should reasonably expect, that its business activities could or would have consequences within the State of South

Carolina.

8. Defendant has established continuous and systematic contacts with the State of South Carolina sufficient to confer general jurisdiction.

**FACTUAL BACKGROUND**

9. At a time prior to December 6, 2009, Blitz designed and manufactured a portable plastic gas can for sale in the stream of commerce (referred to hereinafter as "Subject Gas Can").

10. The Subject Gas Can was purchased by a family friend.

11. On or about December 6, 2009, Plaintiff's son Ethan Grooms used the Subject Gas Can to pour gas to be used in the ignition of debris in a burn barrel. Shortly thereafter, gasoline vapors outside the Subject Gas Can ignited and the flame flashed back into the vapor trail inside the container, causing the Subject Gas Can to explode. The explosion caused catastrophic injury to Plaintiff's son Ethan Grooms.

12. Blitz designed, manufactured, assembled, marketed, distributed and sold the Subject Gas Can that caused Plaintiff's son Ethan Grooms's injuries and Plaintiff's damages.

13. The Subject Gas Can was not modified or altered after it left Blitz's control, and Plaintiff's son Ethan Grooms was utilizing the Subject Gas Can in an ordinary and reasonable manner in which the Subject Gas Can was intended and reasonably expected to be used.

14. Prior to the manufacturer of the Subject Gas Can, Blitz was aware that Blitz gas can owners use the cans to pour gas as an ignition source for burn barrels. Thus, Plaintiff son's use of the Subject Gas Can was reasonably foreseeable.

15. The Subject Gas Can was defective and unsafe for its intended purposes at the time it left the control of the Blitz in that the design failed to include a flame arrestor device, which is a necessary safety device that would have prevented the Plaintiff's son's injuries.

16. Prior to the manufacture of the Subject Gas Can, Blitz was aware that other manufacturers including Eagle Manufacturing and Chilton had chosen to incorporate flame arrestors into plastic gas cans. Thus, the incorporation of flame arrestors into plastic gas cans was technologically feasible.

17. Defendant Blitz knew or should have known of the Subject Gas Can's susceptibility to flashback which occurs when gasoline vapors ignite and the flames chase the vapor trail back into the can, causing an explosion and/or spew of flames and burning gasoline.

18. Prior to the explosion of the Subject Gas Can, neither Plaintiff nor Ethan Grooms was aware that the gas can could have been sold with a flame arrestor and/or that it did not contain a flame arrestor, nor were they aware that a fire could follow fumes and flash back into the can causing a bomb like explosion.

19. As a direct and proximate result of Blitz's acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the Subject Gas Can, which lacked a flame arrestor/flashback arrestor, Plaintiff's son Ethan Grooms suffered and continue to suffer severe personal injuries, including, but not limited to, severe burns, physical pain and impairment, physical disfigurement and other recoverable damage.

**CAUSES OF ACTION**
**COUNT 1 DESIGN DEFECT**

20. Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pled herein.

21. The Subject Gas Can designed, manufactured, assembled, marketed, distributed, and sold by Blitz was defective and/or unreasonably dangerous when sold.

22. The Subject Gas Can designed, manufactured, assembled, marketed, distributed, and sold by Blitz was the producing cause of Plaintiff's son Ethan Grooms injuries and Plaintiff's damages.

23. Blitz is engaged in the business of designing, manufacturing, assembling, marketing, distributing, and selling portable gas cans, including the Subject Gas Can, to consumers within the stream of commerce.

24. Blitz expected the Subject Gas Can, so introduced and passed on in the course of trade, to ultimately reach the residential consumer and/or users without substantial change in the condition in which it was originally sold.

25. The Subject Gas Can was without substantial change in the condition from which it was originally sold by Blitz and unexpectedly failed under ordinary and foreseeable use.

26. At the time the portable gas can left Blitz's control, and at all times complained of, safer alternative designs were available that would have eliminated the risk of the Subject Gas Can exploding without substantially impairing the usefulness and intended purpose of the product.

27. The Subject Gas Can was unreasonably dangerous and defective in that its design and construction did not incorporate a flame arrestor, a technologically and

economically feasible safety device that would have prevented the explosion in the present case.

28. A flame arrestor, sometimes called a flame arresting screen, flash arrestor or spark arrestor, is a small metal device that is placed in a container's openings and allows liquids to flow out of the container but prevents the flashback of flames back into the container. The device consists of either a perforated metal screen or a wire mesh screen.

29. The efficacy of flame arrestors has been known to the gasoline manufacturing industry for decades, and particularly the manufacturers of portable gas cans have been aware of their existence since before they were first placed in industrial gas cans in the 1920's and began being placed in consumer gas cans by at least 1978.

30. For more than a quarter century, the utility and efficacy of flame arrestors has been a topic of discussion in the media and national publications and the subject of numerous lawsuits filed by consumers, users, and bystanders who have been burned and/or killed in encounters with portable gas cans that were not equipped with the device.

31. Consequently, Blitz has known, or should have known, for decades prior to this incident that gas cans without flame arrestors were susceptible to flashback (i.e., when gasoline vapors outside the container ignite, the flames can follow the vapor trails back inside the container causing it to explode and/or spew flames and burning gasoline).

32. Without the inclusion of a flame arrestor, the foreseeable risk of injury and/or death associated with the use of the Subject Gas Can far exceeded any utility and/or benefits associated with its design.

33. Nevertheless, despite the wealth of available scientific knowledge, Blitz has made, and continues to make, a conscious decision to endanger the safety of consumers, users, and bystanders by refusing to incorporate a well-known safety device into its portable gas cans, despite the fact that this safety device is economically and technologically feasible.

34. As a direct and proximate result of one or more of Blitz's acts or omissions as described herein and as a direct and proximate result of the Subject Gas Can's defective design, Ethan Grooms suffered severe burn injuries.

35. As such, Blitz is liable pursuant to the provisions of South Carolina Defective Products Act, S.C. Code Ann. 15-73-10 et. seq.

**COUNT 2 FAILURE TO WARN**

36. Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pled herein.

37. Blitz failed to provide adequate warnings that would be reasonably calculated to catch the attention of a reasonably prudent person because its warnings were not conspicuous.

38. At the time the portable gas can left Blitz's control, consumers and/or foreseeable users, such as Plaintiff or her son, were not and still are not, likely to possess knowledge of the extent and magnitude of the risks associated with using Blitz's portable gas cans.

39. Without such knowledge, consumers and/or foreseeable users would not be in a position to avoid the product's inherent dangers through the exercise of ordinary and reasonable care. Conversely, Blitz knew, and was certainly in the best position to know, that its portable gas cans, as designed, posed a tremendous and horrific risk of injury to consumers, users, and bystanders.

40. As a direct proximate result of one or more of Blitz's failures to warn of the subject gas can's defective design, Ethan Grooms suffered severe burn injuries.

## COUNT 3 NEGLIGENCE

41. Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pled herein.

42. Blitz owed consumers and/or foreseeable users, including Plaintiff's son Ethan Grooms, the duty of reasonable care in its design, manufacture, assembly, marketing, distribution and sale of the Subject Gas Can.

43. Blitz ignored and/or breached that duty by its following negligent acts and/or omissions:

A. Failed to design and produce a reasonably safe portable gas can;

B. Designed, manufactured, assembled, marketed, distributed, and sold a portable gas can that was defective;

C. Placed into the stream of commerce a portable gas can that was defective in design;

D. Placed into the stream of commerce a portable gas can that was defective in that it failed to contain adequate warnings and instructions;

E. Placed into the stream of commerce a portable gas can that was unfit for its intended use;

F. Placed into the stream of commerce a portable gas can likely to cause injury in its ordinary use;

G. Placed into the stream of commerce a portable gas can that contained manufacturing defects;

H. Failed to incorporate a flame arrestor in the product design;

I. Failed to properly test its portable gas can and prototypes thereof with flame arresting material;

J. Failed to provide adequate instructions and warnings with the product after learning, knowing, or having reason to know, that a safety device existed prior to manufacture that rendered the Subject Gas Can unreasonably dangerous and defective under existing standards existing at the time of manufacture and sale;

K. Failed to provide adequate warnings that would be reasonably calculated to catch the attention of a consumer and/or user of that would convey a fair indication of the nature and extent of the dangers involved in using or misusing its product;

L. Failed to actively seek information regarding incidents in which consumers, users, and bystanders were injured and/or killed when they encountered portable gas cans;

M. Failed to actively seek information regarding incidents involving explosion and/or internal combustion of portable gas cans;

N. Failed to provide post-sale warnings after knowing, or having reason to know of the defects existing in the Subject Gas Can at the time it was sold that rendered it unreasonably dangerous for its intended use at the time it was sold and made the Subject Gas Can defective under existing standards existing at the time of manufacture and sale;

O. Failed to take subsequent remedial measures or to recall the product after learning, knowing, or having reason to know of the defects existing in the product at the time it was sold that rendered it unreasonably dangerous for its intended use and defective under existing standards existing at the time of manufacture and sale;

P. Ignored and/or failed to investigate scientific, technological and industry information and studies regarding the efficacy of flame arrestors;

Q. Ignored and/or failed to investigate other lawsuits and/or similar incidents involving similar claims and incidents in which consumers, users, children, and/or bystanders were severely and routinely burned and/or killed when encountering such portable gas cans;

R. Failed to report incidences and lawsuits involving other consumers, users, and bystanders who have been burned and/or killed when encountering the portable gas cans to the Consumer Product Safety Commission;

S. Failed to warn that the gas can was not equipped with safety devices;

T. The subject gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by

the average reasonable consumer, and the risks associated with this design outweighed its utility; and

U. Blitz knew or should have known that consumers would use their gas cans to start and/or maintain a fire, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent ignition and flashback.

44. As an actual and proximate result of Blitz's negligent acts and/or omissions, the Subject Gas Can, that caused Plaintiff's son's injuries, was placed into the stream of commerce in a defective and unreasonably dangerous condition.

45. Plaintiff's son Ethan Grooms's injuries and the manner in which they occurred were reasonably foreseeable to Blitz, which had actual and/or constructive knowledge from within the industry, nation publications, media reports and prior claims and lawsuits, that consumers, users, and bystanders were being routinely burned and/or killed when using their portable gas cans.

46. As a direct and proximate result of one or more of Blitz's negligent acts or omissions as described herein, Plaintiff's son Ethan Grooms suffered severe burn injuries.

## COUNT 4 BREACH OF WARRANTY

47. Plaintiff re-alleges and incorporates into this count each and every preceding allegation as if fully pled herein.

48. Blitz, by and through the sale of its portable gas cans, impliedly warranted to the consumer and/or foreseeable users, such as Plaintiff's son Ethan Grooms, that the container was fit for its ordinary and foreseeable purposes.

49. Plaintiff's son Ethan Grooms made ordinary use of the container in reliance on said warranties.

50. Contrary to said warranties, the portable gas can was defective and unfit for its ordinary and foreseeable purposes, rendering it unreasonably dangerous.

51. Blitz breached its implied warranties by one or more of the following respects, among others:

a. Failure of the gas can itself and by improper marketing;
b. Failure to equip the gas can with a flame arrestor and/or other safety devices to make the gas can safe for its foreseeable environment;
c. Failed to provide adequate warnings about the inherent dangers involved in the use of gasoline and its gas can;
d. Failed to warn that the gas can was not equipped with a flame arrestor or other safety devices;
e. The gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with its design outweighed its utility;
f. Blitz knew or should have known of feasible alternative designs that would have significantly reduced and/or eliminated the risk of flammable vapor ignition and failed to employ said design alternatives to make it for its foreseeable environment;
g. Blitz knew or should have known that consumers would use gas cans to start and/or maintain fires, creating an unreasonable and unexpected

hazard of vapor ignition and resulting fire, without appropriate design features to prevent flashback;

h. Failed to assure that the product design included a flame arrestor;

i. Failed to protect foreseeable users of the gas can from the dangers present in the use of such container, which dangers Blitz knew or should have known existed;

j. Failure to recall and/or repair the product;

k. Placed on the market a gas can which was unfit for its intended use; and

l. Placed on the market a gas can which was not safe for the ordinary purpose for which it was sold.

52. As an actual and proximate result of Blitz's breach of said warranties, the subject gas can was placed into the stream of commerce in a defective and unreasonably dangerous condition.

53. Plaintiff's son Ethan Grooms's injuries and the manner in which they occurred were reasonably foreseeable to Blitz, which had actual and/or constructive knowledge from within the industry, national publications, media reports, and prior claims and lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when using their portable gas cans.

54. As a direct and proximate result of said breach of warranty, Plaintiff's son, Ethan Grooms suffered severe burn injuries.

## CAUSATION AND DAMAGES

55. Plaintiff re-alleges and incorporates in this section each and every preceding allegation as if fully pled herein.

56. Defendant Blitz caused Plaintiff's son Ethan Grooms to suffer significant and permanent injury and harm as a result of the negligence and other tortuous conduct set forth herein. Plaintiff demand money damages consistent with South Carolina law for the harm inflicted by Defendant, including, but not limited to the following:

i. Past and future costs of medical care;
ii. Past and future losses of wages, entitlements, support and other recoverable economic losses;
iii. Past and future emotional distress; and
iv. Past and future pain and suffering.

57. Defendant has exhibited such willful disregard and/or absence of due care and/or recklessness and/or gross negligence such that punitive damage are appropriate in this action. Defendant's conduct includes refusing to incorporate a flame arrestor in the Subject Gas Can despite *inter alia* knowledge of the feasibility and relative inexpensive nature of such a device; the propensity of Blitz gas can users to use gas cans in a manner such as that used by Plaintiff; the catastrophic injuries suffered by similarly situated users; and the fact that a flame arrestor would prevent injuries such as those suffered by Plaintiff's son Ethan Grooms.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Tabitha Alexson as Natural Guardian and Next Friend to Ethan Grooms prays that they be awarded all compensatory and punitive damages due and owed, including attorney's fees and costs

associated with the prosecution of this action, as allowed by South Carolina law, and for such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted, this 16th day of June, 2011.

By: s/ Brady R. Thomas
Terry E. Richardson, Jr. (#3457)
E-Mail: trichardson@rpwb.com
Daniel S. Haltiwanger (#7544)
E-Mail: dhaltiwanger@rpwb.com
Brady R. Thomas (#9623)
E-Mail: bthomas@rpwb.com
RICHARDSON, PATRICK, WESTBROOK
& BRICKMAN, L.L.C.
P. O. Box 1368
1730 Jackson Street
Barnwell, SC 29812
Telephone No.: (803) 541-7850
Fax No.: (803) 541-9625

S. Kirkpatrick Morgan, Jr.
E-Mail: km@walkermorgan.com
William P. Walker, Jr.
E-Mail: bw@walkermorgan.com
WALKER & MORGAN, LLC
P.O. Box 949
Lexington, SC 29071
Telephone No.: (803)359-6194
Fax No.: (803)957-4584